McCORD, Judge.
The defendants below, W. R. Lindsey, Terri Jean Lindsey, and Nationwide Mutual Insurance Company, appeal from the trial court’s order granting the plaintiffs’ motion for a new trial. We reverse.
The plaintiffs, David E. Johnson and his wife Mattie, brought suit against the defendants for damages allegedly arising out of a motor vehicle accident that occurred on December 3,1975. On that day, at approximately 4 p. m., David Johnson was driving toward his residence on Highway 349 in Dixie County. He and his wife were in a Dodge pickup truck, which was pulling a *779 boat and trailer. He testified that he was driving at approximately 35 m. p. h. when, about 800 feet from his house, he turned on his truck’s left turn signal. About a minute later, approximately 400 feet from his house, he looked through his rearview mirror and did not see anyone behind him. As he approached the driveway, he turned across the center of the road and began to make his left turn. Reaching his driveway, he decreased his speed and was going approximately 10 m. p. h. when he reached the driveway. As he started into the driveway, he was struck by a car coming from behind. Johnson admitted at the time of the accident he did not have any operative signals or lights on the boat trailer. He also admitted that he did not look into the rearview mirror after the 400-foot mark because his attention was focused ahead for on-coming traffic.
The car that struck the Johnsons was owned by the defendant W. R. Lindsey and was being driven by his daughter, Terri. While she thought the speed limit was either 65 or 70 m. p. h., she testified that she was traveling at approximately 55 m. p. h. She further stated that her maximum speed would have been 60 m. p. h. As she approached the truck, she realized it was going “real slow” so she decided to pass. When she began to pass, the truck made a left turn in front of her. As she approached and started to pass, she did not see any turn signals on either the boat or the truck. She does not recall that any center lines were painted in the pavement and testified that if there had been lines, “... I wouldn’t have passed. I mean I know how to read the lines on the road.”
The accident was investigated by Patrolman D. H. Dufore. He testified that he did not recall whether the center line, which was depicted in a picture of the accident scene taken five years after the accident, was painted on the road at the time of the accident. He also indicated that there was nothing in his accident report to show a no-passing area. It was his normal practice to observe whether a solid yellow line is at the scene of an accident and to indicate it on the accident report diagram if it had anything to do with contributing toward the accident. He thought that this was the type of accident where the existence of a solid yellow line would be important. He further stated that he did get down onto the road surface to measure and visually inspect the skid marks on the road surface but still did not notice any solid yellow lines. He also was not aware that any speed limit signs existed on that road within the two miles leading to the scene of the accident.
On the other hand, Mr. Johnson testified that the solid yellow line that is now on the pavement was present at the time of the accident. His testimony was supported by that of Gary Jones, a marine patrol officer, who testified that he had traveled on that road three to four times a week since 1974 and that the center line markings have been on the road since that time.
At the close of the parties’ presentation of the evidence and arguments, the trial court gave in its charge to the jury the following relevant instructions: (1) that Section 316.030(1) provides that any person operating a vehicle upon the streets or highways within the state shall drive in a careful and prudent manner under the circumstances existing; (2) that Section 316.085(2) provides that a vehicle shall not be driven from one lane on a highway across the other lane until the driver has determined that he is not being approached or passed by any other vehicle in the lane toward which he is moving; (3) that Section 316.-086 provides that when no-passing zones or markings are in place and clearly visible to an ordinary observant person, no driver shall drive on the left side of the roadway within such no-passing zone; (4) that Section 316.089(1) provides a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved in such lane until the driver has first ascertained that such movement can be made with safety; (5) that 316.183(5) provides that no person shall drive a motor vehicle at such a slow speed as to impede or block normal and reasonable movement of traffic except when reduced speed is necessary for *780 safe operation or in compliance with the law; (6) that § 316.183(1) provides that no one shall drive at a speed greater than is reasonable under the circumstances prevailing; (7) that 316.222 requires every motor vehicle, trailer, semitrailer, and pole trailer to be equipped with stop lamps and turn signals. The jury then retired and, after one hour of deliberation, returned a verdict in favor of the defendant.
The trial court subsequently granted the plaintiffs’ motion for a new trial, finding that the “verdict was based upon passion, prejudice, sympathy or some other consideration outside of the evidence, or that the jury failed to understand, weigh or consider the force and credibility of the evidence or failed to follow or understand the charges of this Court ... . ” He also noted that the “.. . verdict was contrary to the manifest weight and probative force of the evidence and that the jury verdict did not comport with logic and reason.” This appeal ensued.
We note that the trial court's decision to grant a motion for new trial is within its sound judicial discretion. See Cloud v. Fallis, 110 So.2d 669 (Fla.1959). However, when the trial court concludes, as this trial court essentially has, that the verdict is against the manifest weight of the evidence or was influenced by considerations outside the record, the order must give reasons which will support one of these two conclusions so that it will be amenable to appellate review. Wackenhut Corp. v. Canty, 359 So.2d 430 (Fla.1978).
Orders granting motions for new trials should articulate reasons for so doing so that appellate courts may be able to fulfill their duty of review by determining whether judicial discretion has been abused.
Id., at 435. Here, the order for new trial is deficient in that it does not contain reference to the record in support of either of its two basic conclusions. Therefore, we have made an independent review of the record in search of support for those conclusions. We find none.
A review of the evidence that was presented to the jury indicates that there were two ways in which the jury could have found Terri Jean Lindsey negligent and to thereby have contributed to the accident: (1) that she was speeding; or (2) that she passed on a solid yellow line. As to both of these points, the evidence was conflicting. The questions, therefore, were properly submitted to the jury and its conclusion should stand:
It is an abuse of discretion to grant a new trial where the verdict finds ample support in the record, no illegal evidence is shown to have gone to the jury, and all that is to be accomplished is to have another jury try the cause.
North Dade Import Motors v. Brundage Motors, 221 So.2d 170, 176 (Fla. 1st DCA 1969). Likewise, we find no support in the record, and no factor has been brought to our attention, as to how or why the jury was impermissibly influenced by “passion, prejudice, sympathy or some other consideration outside of the evidence.” Indeed, plaintiffs, an elderly couple, strike us as the sort of victims most likely to appeal to a jury’s sense of sympathy and largesse. Further, there is nothing to indicate the jury misunderstood or failed to follow the charges of the trial court. The mere fact that the jury verdict was arrived- at in a relatively short period of time does not, by itself, establish that the jury failed to perform its function. North Dade Import Motors, supra, at 177. The jury instructions were a correct formulation of the applicable law, and we will not assume that, without more, the jury was remiss in its allotted task of applying those instructions to the facts. Therefore, finding no affirmative support to show the impropriety of the jury’s findings, we must conclude that the trial court, perhaps understandably, abused its discretion in granting the plaintiff’s motion for a new trial. See Wackenhut, supra.
Accordingly, we reverse and remand this cause to the trial court with directions that the jury’s verdict in favor of the defendants be reinstated.
ERVIN and SHAW, JJ., concur.